**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>       Plaintiff<br><br>    v.<br><br>UNITED AIRLINES, INC.,<br><br>       Defendant. | CIVIL ACTION NO. 5:18-cv-817 |

## UNITED AIRLINES, INC.'S ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant UNITED AIRLINES, INC., by and through its attorneys, and for its Answer

and Defenses to Plaintiff EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S

Complaint, states as follows:

## COMPLAINT ¶1:

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

## ANSWER:

United admits that Plaintiff invokes this Court's jurisdiction pursuant to 28 U.S.C. §§

451, 1331, 1337, 1343 and 1345, and that it asserts that this action is authorized by Section

706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-

5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

For the purposes of this action only, United admits that the Court has subject matter jurisdiction

over this matter.  United denies the remaining allegations in Paragraph 1.

**COMPLAINT ¶2:**

       The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Texas, San Antonio Division.

**ANSWER:**

       For the purposes of this action only, United admits that venue is proper in this judicial

district.  United denies the remaining allegations in Paragraph 2.

**COMPLAINT ¶3:**

       Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

**ANSWER:**

       United admits that Plaintiff is an agency of the United States of America and that it

purports to bring this action pursuant to Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §

2000e-5(f)(1).  United denies the remaining allegations in Paragraph 3.

**COMPLAINT ¶4:**

       At all relevant times, Defendant, ("United Airlines" or "United"), has continuously been doing business in the State of Texas, the City of San Antonio, Texas, and across the United States, and has continuously had at least 15 employees.

**ANSWER:**

       United admits the allegations in Paragraph 4.

**COMPLAINT ¶5:**

       At all relevant times, Defendant United Airlines has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

**ANSWER:**

       United admits the allegations in Paragraph 5.

**COMPLAINT ¶6:**

More than thirty days prior to the institution of this lawsuit, Jane Doe filed a charge with the Commission alleging violations of Title VII by Defendant.

**ANSWER:**

Upon information and belief, United admits the allegations in Paragraph 6, but denies

that it has violated Title VII or any other law.

**COMPLAINT ¶7:**

On September 12, 2017, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

**ANSWER:**

United admits that Plaintiff issued a Letter of Determination to United dated September

12, 2017, indicating that it found reasonable cause to believe Title VII had been violated and

inviting United to conciliate.  United denies that it has violated Title VII or any other law, and

denies the remaining allegations in Paragraph 7.

**COMPLAINT ¶8:**

On November 30, 2017, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

**ANSWER:**

United admits that the EEOC issued a Notice of Failure of Conciliation to United dated

November 30, 2017, but denies that the EEOC provided United with a meaningful opportunity to

conciliate this matter, and denies that it violated Title VII or any other law.

**COMPLAINT ¶9:**

All conditions precedent to the institution of this lawsuit have been fulfilled.

**ANSWER:**

United denies the allegations in Paragraph 9.

**COMPLAINT ¶10:**

Since at least May of 2011, and thereafter until at least July of 2016, Defendant engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. 2000(e)(a)(1).

**ANSWER:**

United denies the allegations in Paragraph 10.

**COMPLAINT ¶11:**

Defendant United Airlines is an American international airline company that offers passenger and cargo air transportation services. United Airlines' corporate headquarters is located in Chicago, IL, and the company operates in over 300 airports across five continents. United Airlines operates mainland hubs in Chicago, Denver, Houston, Los Angeles, New York/Newark, San Francisco, and Washington, D.C., and employs more than 80,000 employees.

**ANSWER:**

United admits the allegations in Paragraph 11.

**COMPLAINT ¶12:**

Defendant subjected Jane Doe to a hostile work environment based on her sex (female).

**ANSWER:**

United denies the allegations in Paragraph 12

**COMPLAINT ¶13:**

Ms. Doe has been employed with the Defendant as a Flight Attendant since about November of 1989.

**ANSWER:**

United admits that Doe has been employed by United since 1989.  United denies the

remaining allegations in Paragraph 13.

**COMPLAINT ¶14:**

From about 2002 until 2006, Ms. Doe was in a consensual intimate relationship with her United Airlines coworker, Mark Uhlenbrock ("Uhlenbrock"), a pilot and Captain, who also exercises supervisory authority over Flight Attendants during flights due to the nature of his job and rank.

**ANSWER:**

United admits that it once employed Uhlenbrock as a pilot and Captain.  United lacks

knowledge or information sufficient to form a belief as to the truth of the allegations regarding

the length, nature, and extent of Doe's personal relationship with Uhlenbrock.  United denies the

remaining allegations in Paragraph 14.

**COMPLAINT ¶15:**

At various times during the private and consensual sexual interactions of their relationship, Ms. Doe allowed Uhlenbrock to take photographic images and/or video of her in provocative poses. Uhlenbrock also took at least one photograph and/or video of Ms. Doe without her knowledge or permission.

**ANSWER:**

United lacks knowledge or information sufficient to form a belief as to the truth of the

allegations regarding Doe's personal relationship with Uhlenbrock or the circumstances under

which certain photographic and/or video images were procured.  United denies the remaining

allegations in Paragraph 15.

**COMPLAINT ¶16:**

In about 2006, one of Ms. Doe's coworkers, a male San Antonio Gate Agent, informed her that he had seen nude photos of her on an internet website for "swingers." The coworker also informed her that he was led to believe that he had been "chatting" with her online and that she appeared to have sent him additional photos via email. Ms. Doe realized that Uhlenbrock had been posting and/or circulating nude images of her which were never intended to be anything other than intimate and private between them as a couple. These images were posted by Uhlenbrock to pornographic websites on the internet without her knowledge or consent. Ms. Doe ended her relationship with Uhlenbrock in 2006, when the Captain refused to cease the offensive and harmful conduct.

**ANSWER:**

United lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 16.

**COMPLAINT ¶17:**

Over the next decade, Uhlenbrock continued to regularly post sexually explicit photos, videos, and stories about Ms. Doe on the internet. Ms. Doe came to learn that these images had been viewed by at least two of her United Airlines coworkers and were presumably accessible to tens of thousands of United Airlines personnel and coworkers, along with countless other people in the U.S. and around the world who are passengers of United Airlines, and who would have access to the internet.

**ANSWER:**

United states that as part of its 2011 and 2013 investigations into Doe's allegations,

United was unable to determine that Uhlenbrock continued to repost images after a permanent

injunction was entered in a prior civil lawsuit by Doe against Uhlenbrock prohibiting him from

posting the same photographic and video images.  United lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17.

Answering further, United states that Doe informed United in September 2013 that she was

aware of only one other United employee that had purportedly viewed the images.

**COMPLAINT ¶18:**

Uhlenbrock's posts were reasonably expected, if not calculated, to affect her terms and conditions at work. At least some of Uhlenbrock's internet posts explicitly implicated Ms. Doe's job as a Flight Attendant by occupation, and in some cases as a Flight Attendant for United Airlines. Uhlenbrock posted partially nude images of Ms. Doe in her United Airlines Flight Attendant uniform. He also repeatedly referred to her by her name, identified her occupation and home airport, and made clear by implication, that her employer was Defendant United Airlines. One post instructed prospective airline passengers to "look for her when you fly!" because she was a "new reason to 'Fly the Friendly Skies.'" (a reference to United's advertising slogan).

**ANSWER:**

United denies the allegations in Paragraph 18.

**COMPLAINT ¶19:**

Ms. Doe diligently and aggressively pursued efforts to stop the sexually offensive conduct, which caused her intimidation, embarrassment and anxiety. This conduct interfered with the performance of her work as a Flight Attendant as personal rapport and congeniality with United's staff and customers are key elements of her successful job performance. Ms. Doe filed three civil lawsuits of public record against Uhlenbrock in Bexar County, Texas in 2009 and 2010. However, despite paying damages and being subject to an injunctive court order, Uhlenbrock continued to post nude images of the Flight Attendant.

**ANSWER:**

United admits that Doe first told United in 2011 that she had previously filed a civil

lawsuit against Uhlenbrock and that he had been ordered to pay her certain damages as a result

of that lawsuit, and that the court had entered a permanent injunction that precluded Uhlenbrock

from further posting any photographic and video images.  United further admits that upon

receiving this information, it promptly conducted an investigation.  United lacks knowledge or

information sufficient to form a belief as to the truth of whether and/or when Uhlenbrock

reposted the same nude photographic and/or video images of Doe that had been the subject of the

private litigation.  United denies the remaining allegations in Paragraph 19.

**COMPLAINT ¶20:**

In or about May of 2011, Ms. Doe complained to two United officials, the Dulles In-Flight Base Operations Manager and an In-Flight Supervisor, that Uhlenbrock was posting nude images of her on the internet without her permission. Ms. Doe provided Defendant with copies of Uhlenbrock's internet postings, including the photo of her in her Flight Attendant uniform. Defendant, however, failed or refused to take appropriate preventative or corrective action in response to Ms. Doe's complaint and information. Uhlenbrock's actions and the failure of Defendant to address the matter effectively had the consequence of interfering with Ms. Doe's ability to perform her job and altering her working conditions.

**ANSWER:**

United admits that in 2011, Doe contacted the Dulles In-Flight Base Operations Manager

to request that she not be assigned to flights assigned to Uhlenbrock, explaining that she believed

Uhlenbrock had posted to the internet nude images that she had consensually provided to him

during the course of her personal consensual relationship with him.  United denies that Doe made a complaint of sex harassment or otherwise requested any further investigation into Uhlenbrock's prior conduct.  United denies the remaining allegations in Paragraph 20.

## COMPLAINT ¶21:

On November 8, 2011, after Defendant's management officials failed to adequately address her concerns about the sex harassment, Ms. Doe filed a more formal complaint with the United Airlines Human Resources Department. She was then interviewed and gave Defendant's managers evidence of postings, incriminating deposition testimony of Uhlenbrock, as well as information about her own efforts to stop the harassment by the Captain. Ms. Doe advised the Defendant's managers that she was concerned for her safety and that Uhlenbrock's conduct adversely affected her daily work life.

## ANSWER:

United admits that on or about November 8, 2011, Doe filed a complaint with United's Human Resources Department stating that Uhlenbrock had posted nude images of her on an internet website and indicating, among other things, that because of Uhlenbrock's conduct she was concerned for her safety, that she did not "want [Uhlenbrock] to be fired," and that she had not flown with or even seen Uhlenbrock since December 2007.  United further admits that upon receiving this complaint, it promptly conducted an investigation, including interviewing Doe; reviewing the postings, deposition testimony and other information she provided in support of her complaint; and interviewing Uhlenbrock, who stated that he was not reposting the images but that they were instead being reused by the same websites to which he admitted initially posting the images before 2009 and which had been adjudicated in the prior civil litigation between the parties.  United denies the remaining allegations in Paragraph 21.

## COMPLAINT ¶22:

As a result of the harassment by Captain Uhlenbrock, Flight Attendant Doe had no reasonable alternative but to bid on only those flights or schedules by which she could most likely avoid working together with Uhlenbrock.

**ANSWER:**

United denies the allegations in Paragraph 22.  Answering further, United states that Doe was repeatedly informed that if she was ever scheduled on a flight with Uhlenbrock, she could contact Human Resources or Management who would assist her in being removed from the flight assignment without any penalty to her.

**COMPLAINT ¶23:**

Defendant was aware as early as 2012, that Uhlenbrock had violated Defendant's company policies, including but not limited to its Social Networking and its Built on Dignity and Respect employer-employee policies articulating the employer's requirements and expectations for its employees.

**ANSWER:**

United admits that after its investigation into Doe's November 2011 complaint, in January 2012, it concluded that Uhlenbrock had violated United's Working Together Guidelines, specifically, the sections titled Building on Dignity and Respect, and Social Networking, and counseled Uhlenbrock accordingly.  United denies the remaining allegations in Paragraph 23.

**COMPLAINT ¶24:**

Upon review of Ms. Doe's claims, United Airlines advised her that Uhlenbrock's conduct purportedly did not constitute sex harassment in the workplace and concluded that it did not warrant intervention or action by the employer. No written discipline was issued to Uhlenbrock.

**ANSWER:**

United admits that after its investigation into Doe's November 2011 complaint, it concluded based on the information available to it that Uhlenbrock's conduct stemmed from a private consensual relationship, that the private civil lawsuit by Doe against Uhlenbrock had resulted in a judgment against Uhlenbrock that included a permanent injunction prohibiting Uhlenbrock from reposting any of the images at issue, that the offenses reported by Doe had not occurred in the United workplace, and that Doe's reports that harassing conduct by Uhlenbrock

continued in 2011 could not be corroborated; however, United did find that Uhlenbrock's

original postings had violated its Working Together Guidelines, specifically, the sections titled

Building on Dignity and Respect, and Social Networking, and therefore counseled Uhlenbrock,

including placing written documentation of this counseling in his personnel file and meeting with

Uhlenbrock to review the Guidelines.  United denies the remaining allegations in Paragraph 24.

## COMPLAINT ¶25:

After Ms. Doe complained about the hostile work environment to the Defendant's
managers in 2012, Uhlenbrock's Chief Pilot, Captain James Simons, provided a letter of
reference for Uhlenbrock stating that he did not have any "flight related or training issues that
have required discipline, counseling, or extra training."

## ANSWER:

United states that Chief Pilot Captain James Simons signed a letter provided to him by

Uhlenbrock that Uhlenbrock represented was requested by his physician.  United denies the

remaining allegations in Paragraph 25.  Answering further, United states that Doe did not initiate

any complaints with United's Human Resources Department in 2012.

## COMPLAINT ¶26:

On or about May 11, 2012, Ms. Doe's private attorney wrote a letter to United's
Executive Vice President for General Counsel and Corporate Secretary to express concerns about
Uhlenbrock's continued employment. The letter detailed Uhlenbrock's sexual harassment of Ms.
Doe, her earlier complaints, and her fears about possibly having to fly with him. Copies of court
orders against Uhlenbrock from 2009 and 2010, as well as earlier emails she exchanged with
various United Airlines managers, were included with the letter seeking an appropriate response
from the Defendant.

## ANSWER:

United admits that it received a letter dated May 11, 2012 from Doe's private attorney,

and refers to that document and the attachments thereto as the best evidence of their content.  To

the extent the allegations in Paragraph 26 mischaracterize or are inconsistent with the letter and

attachments, they are denied.  United denies the remaining allegations in Paragraph 26.

**COMPLAINT ¶27:**

Ms. Doe was never advised by Defendant as to what action the employer took to address her complaints about the sex harassment. No discipline was placed in Uhlenbrock's personnel file.

**ANSWER:**

United admits that while it did not share the nature of any action taken with Doe, it denies that no action was taken and denies that no documents regarding such action were "placed in Uhlenbrock's personnel file." United denies the remaining allegations in Paragraph 27. Answering further, United concluded that Uhlenbrock had violated its Company policies and counseled Uhlenbrock accordingly, and placed written documentation of that counseling in his personnel file.

**COMPLAINT ¶28:**

In 2013, another Flight Attendant based in Houston, Texas, told Ms. Doe that he had found nude images of her on a pornographic website.

**ANSWER:**

United lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28.

**COMPLAINT ¶29:**

On or about September 18, 2013, Ms. Doe filed yet another complaint about Uhlenbrock's new internet postings with United's Human Resources Department. She again provided information, including dates and IP addresses, indicating that Uhlenbrock had posted the images, including but not limited to times while he was on layovers while working for the airline. During layovers, United restricts its employees' activities and pays their lodging and a per diem.

**ANSWER:**

United admits that on or about September 18, 2013, Doe filed a complaint with United's Human Resources Department and provided information in support of that complaint including dates and IP addresses that she believed supported her belief that Uhlenbrock was continuing to

repost the images obtained during their consensual relationship which ended in 2006.  United

denies the remaining allegations in Paragraph 29.  Answering further, Defendant states that it

promptly conducted an investigation into Doe's September 18, 2013 complaint that included

interviewing Doe and Uhlenbrock, obtaining a written statement from Uhlenbrock, reviewing

and analyzing the information provided by Doe, and attempting through its corporate security

team to verify whether the relevant IP addresses produced by Doe had been utilized by

Uhlenbrock; however, Uhlenbrock continued to deny that he had reposted any images, and

United was unable to confirm that the images had in fact been reposted by Uhlenbrock and not

instead by the websites reusing the original images.

## COMPLAINT ¶30:

On or about November 1, 2013, Defendant interviewed Uhlenbrock, but otherwise failed
or refused to meet its responsibilities to conduct sufficient investigation that could be reasonably
calculated to be effective. As was the case at the time of the prior complaints by Ms. Doe, no
adequate disciplinary, preventative or corrective action was taken by the Defendant at the time of
this complaint and interview.

## ANSWER:

United admits that it interviewed Uhlenbrock on multiple occasions, including on

November 1, 2013.  Defendant denies the remaining allegations in Paragraph 30.

## COMPLAINT ¶31:

In May of 2015, the Federal Bureau of Investigations ("FBI") arrested Uhlenbrock and
charged him with stalking for his continual posting of nude images of Ms. Doe without her
knowledge or consent, in spite of her objections and despite the legal processes which she had
pursued against him.

## ANSWER:

Upon information and belief, United admits that the FBI arrested Uhlenbrock in 2015.

United lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in Paragraph 31.

**COMPLAINT ¶32:**

In August of 2015, a search warrant was issued and Uhlenbrock's computers were seized by the FBI. Defendant also interviewed Uhlenbrock, at which time he admitted to reposting the images of Ms. Doe online in early summer of 2015. At the time of the interview, Defendant was aware of the FBI's involvement. Despite this information, Defendant continued to employ Uhlenbrock throughout the FBI investigation and court proceedings.

**ANSWER:**

United lacks knowledge or information sufficient to form a belief as to the truth of the

allegations regarding the FBI's actions or Uhlenbrock's purported admissions to the FBI.  United

admits that it interviewed Uhlenbrock on multiple occasions, including in 2015.  Defendant

denies the remaining allegations in Paragraph 32.  Answering further, United states that upon

receiving information that the FBI had obtained evidence indicating that Uhlenbrock had

continued reposting the images of Doe, United promptly removed Uhlenbrock from service and

he never returned to active service before retiring in lieu of termination in 2016.

**COMPLAINT ¶33:**

Uhlenbrock made various admissions to the FBI, and in June of 2016, he pleaded guilty to stalking in violation of Title 18, USC 2261A(2)(B) and was sentenced to 41 months in prison.

**ANSWER:**

Upon information and belief, United admits that Uhlenbrock was sentenced to prison in

2016.  United lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in Paragraph 33.

**COMPLAINT ¶34:**

Defendant granted Uhlenbrock long-term disability in January of 2016. He was paid by United Airlines and received benefits during this time.

**ANSWER:**

United admits that Uhlenbrock applied for and was awarded long term disability benefits

in January 2016 by the insurance company that decides and pays its claims for long term

disability benefits. United denies the remaining allegations in Paragraph 32. Answering further, United states that it played no role in determining that Uhlenbrock qualified for long term disability benefits.

**COMPLAINT ¶35:**

Uhlenbrock remained on Defendant's payroll until July of 2016 when he was allowed to retire with full benefits.

**ANSWER:**

United admits that Uhlenbrock remained on long term disability status until he retired in July 2016, and that he received certain payments required by United's collective bargaining agreement and benefit plans to be paid to employees on long term disability status. United specifically denies that Uhlenbrock retired with full benefits, and denies that he remained on United's active payroll until July 2016. United denies any remaining allegations in Paragraph 35.

**COMPLAINT ¶36:**

Despite having employee rules of conduct, disciplinary mechanisms, applicable policies and procedures and the authority to prevent and correct the continued unlawful conduct of Uhlenbrock, Defendant failed or refused to take reasonably necessary actions to protect Flight Attendant Doe from harassment while Captain Uhlenbrock was employed.

**ANSWER:**

United denies the allegations in in Paragraph 36.

**COMPLAINT ¶37:**

Ms. Doe suffered humiliation, emotional pain and suffering, stress, inconvenience, loss of self-esteem and loss of enjoyment of life as a result of Uhlenbrock's -conduct and Defendant's passive and ineffective approach to prevent and correct the reported and continued harassment. Ms. Doe suffered emotional harm attributable to the hostile environment which was perpetuated by Defendant's failure to meet its responsibilities as an employer under the law.

**ANSWER:**

United denies the allegations in Paragraph 37.

**COMPLAINT ¶38:**

Defendant failed or refused to take appropriate preventative or corrective action in response to Ms. Doe's multiple, repeated and specific complaints which were accompanied by information on which the employer could and should have acted.

**ANSWER:**

United denies the allegations in Paragraph 38.

**[SIC]**

**COMPLAINT ¶40:**

Due to the emotional harm suffered as a result of the continuous harassment and the inaction by the employer, it became necessary for Ms. Doe to utilize her leave under the Family Medical Leave Act ("FMLA") in April of 2015.

**ANSWER:**

United admits that Doe went on FMLA leave in April 2015.  United denies the remaining

allegations in Paragraph 40.

**COMPLAINT ¶41:**

The effect of the practices complained of in paragraphs 10-40 above has been to deprive Jane Doe of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.

**ANSWER:**

United denies the allegations in Paragraph 41.

**COMPLAINT ¶42:**

The unlawful employment practices complained of in paragraphs 10-40 above were intentional.

**ANSWER:**

United denies the allegations in Paragraph 42.

**COMPLAINT ¶43:**

The unlawful employment practices complained of in paragraphs 10-40 above were done with malice or with reckless indifference to the federally protected rights of Jane Doe.

**ANSWER:**

United denies the allegations in Paragraph 43.

## ANSWER TO REMAINDER OF COMPLAINT

The remaining paragraphs of the Complaint contain Plaintiff's prayer for relief and jury demand.  United denies that Plaintiff is entitled to any relief.  United denies every remaining allegation in the Complaint that has not been separately and specifically admitted.

## AFFIRMATIVE AND OTHER DEFENSES

In addition to the admissions, denials, and other responses set forth above, United asserts the following affirmative and other defenses.  In pleading these defenses, United does not assume any burdens of production or proof that it would not otherwise have.  Further, United specifically reserves the right to raise any and all counterclaims and additional defenses, including affirmative defenses, that may become apparent at any time during the course of this litigation.

1.      Plaintiff's Complaint, in whole or in part, fails to state a claim against United upon which relief may be granted.

2.      Plaintiff's claims are precluded by the Railway Labor Act.  United is a common carrier by air and therefore covered by the Railway Labor Act ("RLA").  *See* 45 U.S.C. § 181.  Doe works for United as a Flight Attendant and is represented for the purposes of collective bargaining with United by the Association of Flight Attendants.  Uhlenbrock worked for United as a pilot and was represented for the purposes of collective bargaining with United by the Air Line Pilots Association, International.  United and the unions are parties to collective bargaining agreements ("CBAs"), which govern Doe and Uhlenbrock's terms and conditions of employment.  The CBAs contain a three-step grievance and arbitration procedure for the resolution of disputes arising under the CBA.  As required by the Railway Labor Act, the

procedure culminates in an arbitration hearing before the System Board of Adjustment.  *See* 45 U.S.C. § 184.  Ruling on the merits of Plaintiff's claim would require interpretation of the CBAs and therefore this is a "minor dispute" under the RLA, which must be arbitrated.

3.      Plaintiff's claims are barred to the extent Plaintiff has failed to satisfy and exhaust the administrative or statutory prerequisites necessary to asserting such claims, including conciliation.  The EEOC did not provide United with a meaningful opportunity to conciliate this matter.  United was never in a position to make an informed decision regarding the EEOC's proposed conciliation agreement, which lacked a reasonable explanation for the basis of its monetary demand or the theory of recovery.

4.      Plaintiff's claims are barred to the extent relief is sought for actions outside the scope of any administrative charge.  Plaintiff alleges that Uhlenbrock's conduct began as early as 2006, but Doe did not raise her concerns with United until 2011 and did not file a charge with the EEOC until on or about July 29, 2015.

5.      Plaintiff's claims are barred to the extent they seek relief for conduct that occurred more than 300 days before Doe asserted a charge of discrimination relating to such claims.  Doe did not file an EEOC charge until on or about July 29, 2015, making claims related to conduct occurring before on or about October 2, 2014, time-barred.

6.      Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, laches, unclean hands, and/or estoppel.  Plaintiff alleges that Uhlenbrock's conduct began as early as 2006, but Doe did not raise her concerns with United until 2011 and did not file a charge with the EEOC until on or about July 29, 2015.

7.      United did not act with discriminatory motives, but even if it had, such acts or omissions would have been taken in any event for legitimate, non-discriminatory, and non-

pretextual reasons.  For example, United's ability to discipline, discharge, or otherwise change the terms and conditions governing Uhlenbrock's employment was constrained by the collective bargaining agreement that governed his employment.

8.      Without admitting any allegation contained in the Complaint, United avers that Plaintiff's claims for punitive damages are barred because Plaintiff cannot prove by clear and convincing evidence that United acted with actual malice or reckless indifference for the federally protected rights of Doe.  Further, punitive damages are not warranted because Plaintiff cannot show that United authorized the doing of any unlawful act; that its agents or employees were unfit and United were reckless in employing them; that United's agents or employees were employed in a managerial capacity and were acting in the scope of its employment in committing any unlawful acts; that United or one of its managerial agents ratified or approved any unlawful act.  Alternatively, even if United's managerial agent or agents whose actions are at issue were acting within the scope of their employment, punitive damages may not be awarded against United because the alleged discriminatory employment decisions of the alleged managerial agent or agents were contrary to the United's good faith efforts to prevent discrimination in the workplace.

9.      To the extent Plaintiff alleges that any employee of United acted in an unlawful manner, such conduct, if it occurred, was outside the course and scope of that individual's employment, was not authorized or condoned by United, and was undertaken without the knowledge or consent of United.  Thus, United is not liable for any such conduct.  United promptly and thoroughly investigated Doe's concerns each time she raised them with the Company; however, United was unable to substantiate that Uhlenbrock engaged in sexual harassment in the workplace or that his alleged conduct altered Doe's working environment.

Uhlenbrock's alleged conduct occurred outside the course and scope of his employment, was not authorized or condoned by United, and was undertaken without the knowledge or consent of United.

10.     Plaintiff's claims are barred, in whole or in part, because any alleged harassing behavior did not culminate in a tangible employment action.

11.     Plaintiff's claims are barred, in whole or in part, because United exercised reasonable care to prevent and correct any harassing behavior, and Doe unreasonably failed to take advantage of the preventative or corrective opportunities United provided.  Plaintiff alleges that Uhlenbrock's conduct began as early as 2006, but Doe did not raise her concerns with United until 2011.  After Doe raised her concerns with United's Human Resources personnel in 2011, it conducted an investigation, which included, among other things, reviewing and analyzing the information provided by Doe and interviewing Doe and Uhlenbrock regarding her allegations.  United learned at that time that Doe had prevailed in private civil litigation against Uhlenbrock and had been awarded damages as well as a permanent injunction precluding Uhlenbrock from posting any images or information regarding Doe.  Nonetheless, United concluded that Uhlenbrock's prior conduct violated its Working Together Guidelines, counseled him accordingly, and placed written documentation of that counseling in his personnel file, as well as met with him to review the applicable policies to ensure his conduct complied with those policies going forward.  On receiving Doe's 2013 complaint, United conducted a second investigation, which included, among other things, interviewing Doe and Uhlenbrock, obtaining a written statement from Uhlenbrock, reviewing and analyzing the information provided by Doe, and attempting to verify through United's corporate security team whether Uhlenbrock could be connected to the IP addresses Doe had provided.  United's investigation was unable to

corroborate that Uhlenbrock was the source of the 2013 postings, but it notified Uhlenbrock that it would re-open the investigation if informed of additional information through law enforcement and/or the courts.  Upon receiving Doe's July 29, 2015 charge of discrimination filed with the EEOC, United promptly removed Uhlenbrock from service, and conducted a third investigation, which included interviewing Doe, reviewing and analyzing the information provided by her, interviewing Uhlenbrock on multiple occasions, reviewing and analyzing a written statement from Uhlenbrock, and reviewing and analyzing information from its prior investigations.  United also was informed that Uhlenbrock was charged in August 2015 with stalking in violation of federal law and that evidence obtained by the FBI as part of that criminal investigation indicated that he had in fact continued to repost images of Doe.  United's 2015 investigation resulted in Uhlenbrock being issued a Letter of Charge in October 2015 initiating formal disciplinary action for violations of United's Working Together Guidelines.  A Letter of Charge was required to be issued by the collective bargaining agreement that governed Uhlenbrock's employment before United could issue any further disciplinary action or terminate his employment.  After being removed from service, Uhlenbrock went on leave and never returned to service, retiring in lieu of termination in 2016.

12.    Plaintiff's claims are barred, in whole or in part, because United was not negligent in controlling Plaintiff's working conditions.  As discussed in Defense No. 11, which is incorporated herein, United promptly and thoroughly investigated Doe's concerns each time she raised them with the Company and acted with reasonable care to prevent and correct any harassing behavior.

WHEREFORE, Defendant United Airlines, Inc. respectfully requests that the Court deny the relief sought by the Complaint, dismiss this action with prejudice, and/or enter judgment on Defendant's behalf, and award Defendant such other relief as the Court deems just and proper.

DATED:  November 12, 2018                    Respectfully submitted,

                                             UNITED AIRLINES, INC.


                                             By:   s/Ada W. Dolph
                                                   _____

                                                   Ada W. Dolph (*admitted pro hac vice*)
                                                   adolph@seyfarth.com
                                                   Gerald L. Pauling (*admitted pro hac vice*)
                                                   gpauling@seyfarth.com
                                                   Seyfarth Shaw LLP
                                                   233 S. Wacker Drive, Suite 8000
                                                   Chicago, Illinois 60606
                                                   Telephone:  (312) 460-5000
                                                   Facsimile:  (312) 460-7000

                                                   Kathryn C. Palamountain
                                                   cpalamountain@seyfarth.com
                                                   Texas State Bar No. 24061004
                                                   Seyfarth Shaw LLP
                                                   700 Milam Street, Suite 1400
                                                   Houston, Texas  77002-2812
                                                   Telephone:  (713) 225-2300
                                                   Facsimile:  (713) 225-2340

                                                   Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2018, I caused a true and correct copy of the

foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF

system, which will send notification of such filing to the following at their e-mail addresses on

file with the Court:

> Robert A. Canino (robert.canino@eeoc.gov)
> Edward Juarez (eduardo.juarez@eeoc.gov)
> Philip Jonathan Moss (philip.moss@eeoc.gov)
> U.S. Equal Employment Opportunity Commission
> San Antonio Field Office
> 5410 Fredericksburg Road, Suite 200
> San Antonio, Texas 78229-3555

> s/Ada W. Dolph
> _____
> One of the Attorneys for
> UNITED AIRLINES, INC.

49289636v.12