IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**
FEB 28 2019
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSIONS, §§§§§ Plaintiff, §§ AND §§ JANE DOE §§ Plaintiff-Intervenor, §§§ v. §§§ UNITED AIRLINES, INC., §§§ Defendant. § | CASE NO. 5:18-cv-00817-DAE |

## COMPLAINT IN INTERVENTION

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES Plaintiff Jane Doe and files this Complaint in Intervention, and respectfully shows the following:

### I.
### PARTIES

1. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

2. Plaintiff-Intervenor is Jane Doe.

3. At all relevant times, Defendant, ("United Airlines" or "United"), has continuously been doing business in the State of Texas, the City of San Antonio, Texas, and across the United States, and has continuously had at least 15 employees.

4. At all relevant times, Defendant United Airlines has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## II.
## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, and 42 U.S.C. § 1981a.

6. Plaintiff has a right to intervene under Rule of Civil Procedure 24(a)(1) and 42 U.S.C. § 2000e-5(f)(1).

7. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Texas, San Antonio Division.

## III.
## FACTS

8. On August 9, 2018, the Equal Employment Opportunity Commission filed suit against United Airlines, Inc. on behalf of Jane Doe, alleging sex discrimination and harassment in violation of Title VII. Jane Doe incorporates the facts stated in the EEOC's complaint filed August 9, 2018 in this Court.

9. In the complaint, the EEOC alleges Ms. Doe, a United Airlines flight attendant, was subjected to sexual harassment and a hostile work environment based on sex because United Airlines pilot Mark Uhlenbrock repeatedly posted sexually explicit photos, videos, and stories about her online.

10. Many of these sexually explicit posts referred to Ms. Doe's job, her home city, her name, showed her in her United Airline's uniform, and/or expressly told strangers to look for her and give her an "inviting wink."

11. These photos and stories were seen by at least two of Ms. Doe's coworkers and presumably by other United Airlines employees and customers.

12. Uhlenbrock knew that his postings were harassing, creating a hostile work environment based on sex for Ms. Doe, and ruining her life. Uhlenbrock admitted as much in San Antonio federal court during his sentencing for cyberstalking:

> I feel that I owe you your life back. I wish I could go back and help you with that. I think about you and what I have done every waking hour of every day. I more than embarrassed you. I humiliated you. I caused you to be fearful. I have affected your social life. I affected your motivation to go to work.

Sentencing Hrg. Tr. at 3-4, No. SA:16-CR-389-XR, (W.D. Tex. Sept. 28, 2016).

13. In May 2011, Ms. Doe complained about the postings to two United Airlines officials, including John Bray, Manager of Inflight Base Operations at Dulles. Specifically, she complained about sexual harassment and expressed her concerns about her safety at work and the safety of other United employees at work. Bray communicated Ms. Doe's complaint to his immediate director and Human Resources.

14. At that time in May 2011, Ms. Doe provided evidence of Uhlenbrock's posts to Bray. Bray provided Ms. Doe's evidence to Mary O'Neil, United's legal counsel. He also discussed Ms. Doe's complaint and safety concerns with her.

15. Based on Ms. Doe's complaint and the evidence submitted, in October 2011, Kay Panos, the Director of Inflight Services, personally spoke with the Chief Pilot of Flights Ops about her concerns regarding Uhlenbrock's behavior.

16. Despite all of these discussions and the evidence Ms. Doe had submitted, United then did worse than nothing: United decided to protect the harasser Uhlenbrock over Ms. Doe's complaints and fears for her safety at work and the safety of United employees at work.

17. Sometime between June and October 2011, United Airlines management told Ms. Panos that the company regarded Uhlenbrock's posting of sexually explicit stories and photos of Ms. Doe, including one in a United Airlines uniform, as a

"personal matter between two adults." Management decided that United need take no further action.

18. United then misplaced the evidence Ms. Doe submitted. It would later turn up in O'Neil's office, United's in-house attorney.

19. In October 2011, Ms. Doe brought her complaints of sexual harassment to Maureen Ridenhour, the Inflight Supervisor at Dulles.

20. Ms. Ridenhour met with HR and Bray about Ms. Doe's sexual harassment complaints, how Uhlenbrock's behavior impacted the work environment, and Ms. Doe's safety concerns.

21. Unfortunately, Ms. Ridenhour ran into the same brick wall Ms. Panos did: United's decision that retaining a pilot was worth more than providing a work environment free of sexual harassment.

22. United Airlines told Ridenhour that Uhlenbrock's sexual harassment of Ms. Doe was a personal matter and United would take no action against him.

23. In November 2011, Ms. Doe filed a formal complaint with United Airlines. Ms. Doe again provided some of Uhlenbrock's postings, his deposition testimony from prior lawsuits Ms. Doe had filed to stop his sexual harassment, and other evidence where Uhlenbrock admits what he did.

24. In her interview with HR representative George Bellamusto, Ms. Doe discussed how Uhlenbrock's sexual harassment affected the work environment. For example, Ms. Doe discussed how when passengers say they know her from somewhere, she "fears it's from a website [Uhlenbrock] has placed her on."

25. She also stated that "He is dangerous and I don't feel safe here [at work] or in my own home."

26. According to the interview, she said "[c]oming to work is hard because she fears to see him. She often is forced to bid on aircrafts that he is not on."

27. "I am not trying to tell on him I just want to be protected at work. I don't want him to be fired. I just want to be protected."

28. Ms. Doe also stated, "[H]e is sexually dangerous. The potential for him to do this to another person . . . is very high. I want to protect myself and to ensure it does not happen to another employee. I am afraid that I will get in trouble if I am assigned another trip with him at some point and refuse the trip."

29. United also learned that Ms. Doe was not the only victim of Uhlenbrock's sexual harassment.

30. During her interview, she told United about another United flight attendant Uhlenbrock was posting pictures and stories about on porn sites. Ms. Doe provided proof of these posts to United.

31. On February 9, 2012, United substantiated her complaint. United specifically concluded that Uhlenbrock's posts constituted "inappropriate and unacceptable workplace behavior in violation of Company policy."

32. In the letter substantiating the complaints, United claimed it took "corrective action." That statement turned out to be a lie.

33. Nothing happened to Uhlenbrock after United found that he had engaged in inappropriate and unacceptable workplace behavior." Uhlenbrock was allowed to continue at United without consequence.

34. Moreover, United's decision to protect Uhlenbrock and failure to take prompt remedial action meant that Ms. Doe and Mr. Uhlenbrock's other victims were left to fend for themselves. United never told Ms. Doe that if she was ever scheduled on the same flight as Uhlenbrock, she could leave the flight without penalty.

35. In May 2012, Ms. Doe's attorney at the time, sent a letter to Executive Vice President Brett Hart, Executive Vice President Michael Bonds, and George Bellamusto about Uhlenbrock's sexual harassment and continued employment with United. Specifically, Ms. Doe's attorney discussed how United had failed to take any actions that would ensure Ms. Doe did not have to work with Uhlenbrock or run into him at a United terminal. This failure to act was perpetuating the hostile work environment Ms. Doe was being subjected to.

36. Mary O'Neil, who, as detailed above, worked with United to protect Uhlenbrock at the expense of Ms. Doe's and others' safety and right to be free of sexual harassment, responded to the letter. She refused to state what corrective action had been taken. Significantly, O'Neil did not state Ms. Doe could walk off a flight if she ran into Uhlenbrock. Instead, O'Neil condescendingly stated, "Of course, if [Ms. Doe] should have any issue at all with Captain Uhlenbrock going forward, she should immediately report it to

her Supervisor or HR representative and we will investigate the matter." Of course, that is not the same thing as saying Ms. Doe can walk off a flight without consequence.

37. Ms. O'Neil's vague statement did not address Ms. Doe's concerns or remedy the hostile work environment based on sex that United was knowingly allowing to continue.

38. In 2013, Ms. Doe discovered that Uhlenbrock was still posting sexually explicit stories and photos of her. As before, these stories and photos concerned her work as a flight attendant for United.

39. In September 2013, Ms. Doe made another formal complaint to United. This time she provided printouts of some of Uhlenbrock's posts, information regarding which IP addresses posted those photos and stories and cross-referenced those addresses with Uhlenbrock's flight schedule.

40. The result was damning. The evidence showed that Uhlenbrock was posting these stories and photos while working for United.

41. On February 26, 2014, United closed her complaint as unsubstantiated. Again, United took no action.

42. In May 2015, Uhlenbrock was arrested by the FBI for the postings he made about Ms. Doe. At that time and thereafter, United continued to employ him.

43. In July, Ms. Doe filed a charge of discrimination with the EEOC.

44. Shortly after the charge was filed, United interviewed Uhlenbrock, who admitted that he was still posting sexually explicit images and stories about

Ms. Doe. Despite admitting to United that he was continuing to sexually harass Ms. Doe, he remained employed by them.

45. In June 2016, Uhlenbrock pleaded guilty to cyberstalking. Despite his guilty plea, United steadfastly continued to keep him employed.

46. In July 2016, United let Uhlenbrock retire with full benefits. In fact, United even presented Uhlenbrock with an award to celebrate his 31 years of service to United Airlines:



47. Even now, after Uhlenbrock has admitted to everything, United, it's executive team, and HR department still deny that he sexually harassed Ms. Doe and that he created a hostile work environment based on sex. This position is in direct contradiction to United's own 2012 written finding that Uhlenbrock had engaged in "inappropriate and unacceptable workplace behavior."

48. Jane Doe still works for United Airlines as a flight attendant and United's actions continue to deprive her of her right to a workplace free from sexual harassment.

49. In a letter that was read into the record at the Uhlenbrock's cyberstalking sentencing in September 2016, Ms. Doe explained why United actions continue to deprive her of her rights:

> Because my name, my occupation and my city of residence were also exposed in these forums, it has and will continue to cause me much anxiety for the remainder of my life. During these years, I have lived in fear that the defendant or someone of an equally ill nature will easily be able to locate me at home or at my place of employment with the intention to harm me, rape me or kill me.
>
> In all public settings, such as my job or outside of my home, I am under constant guard and in fear that someone will recognize me from one of the many pornographic web sites that I have been exposed on and it is a struggle to control the amount of adrenaline and fear I experience in those moments.
>
> This anxiety eventually escalated to a very unnatural and unhealthy setting for myself and for my family and has had very damaging consequences. It has interfered greatly with my ability to speak publicly and to be in situations, such as my work-related setting, where people are looking at me as I perform my job.

Sentencing Hrg. Tr. at 10, No. SA:16-CR-389-XR, (W.D. Tex. Sept. 28, 2016).

50. All conditions precedent to the bringing of this lawsuit have been satisfied.

### IV.
### CAUSE OF ACTION: SEX DISCRIMINATION

51. Plaintiff incorporates paragraphs 1-50 above as if restated herein.

52. United is an employer under Title VII.

53. Ms. Doe is female.

54. United discriminated against Ms. Doe because of her sex.

55. By failing to take prompt remedial action, United subjected Ms. Doe to unwelcome harassment because of her sex for years.

56. The discrimination and harassment was severe or pervasive enough to affect the terms and conditions of Ms. Doe's employment.

57. United's actions or failure to act perpetuated and enabled this hostile work environment based on sex.

58. Because of United's actions, Ms. Doe has suffered damages within the jurisdictional limits of this Court.

## V.
## JURY DEMAND

59. Plaintiff-Intervenor demands trial by jury.

## VI.
## DAMAGES

60. Plaintiff-Intervenor seeks all damages allowed under the law, including monetary damages and:

    (a)    injunctive relief;

    (b)    actual damages;

    (c)    court costs, reasonable attorney's fees;

    (d)    back pay, front pay, and other compensation for wages lost as a result of Defendant's actions;

(e) emotional distress, mental anguish; and

(f) punitive damages because that Defendant's actions were motivated by malice, or reckless indifference to Plaintiff's federally protected rights.

(g) Plaintiff-Intervenor seeks pre- and post-judgment interest at the maximum rate allowed by law.

WHEREFORE, premises considered, Plaintiff-Intervenor respectfully prays that Defendant be cited to appear and, that upon a trial on the merits, all relief requested be awarded to Plaintiff-Intervenor, and for such other and further relief to which Plaintiff-Intervenor is justly entitled.

Respectfully submitted,

/s/ Colin Walsh
Robert J. Wiley*
Texas Bar No. 24013750
Colin Walsh*
Texas Bar No. 24079538
*Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization

WILEY WALSH, P.C.
1011 San Jacinto Blvd, Ste 401
Austin, TX 78701
Telephone: (512) 271-5527
Facsimile: (512) 201-1263
colin@wileywalsh.com

ATTORNEYS FOR PLAINTIFF-INTERVENOR

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2018, I served a copy of the foregoing on counsel for the EEOC via e-filing.

*/s/ Colin Walsh*
Colin Walsh
